1
2
3              UNITED STATES DISTRICT COURT
4                   DISTRICT OF NEVADA
5                        * * *
6   DONALD J. BURKE, *et al.*,              Case No. 3:23-cv-00184-MMD-CSD
7                         Plaintiffs,       ORDER
8        v.
    LEWIS INVESTMENT COMPANY OF
9   NEVADA, LLC, *et al.*,
10                       Defendants.
11

12  **I.    SUMMARY**

13         Plaintiffs Donald J. Burke ("Burke Sr.") and Donald W. Burke ("Burke Jr.") sued

14  Defendants Lewis Investment Company of Nevada, LLC ("Lewis"), Kiley Ranch Six

15  Apartments, LLC, and Luke Dragovich for alleged copyright infringement and unjust

16  enrichment regarding the development of an apartment complex known as Kiley Ranch

17  in Sparks, Nevada that allegedly infringed on copyrighted architectural plans developed

18  by Plaintiffs. (ECF No. 1.) Defendants counterclaimed that Plaintiffs' copyrights are invalid

19  and not infringed by Kiley Ranch. (ECF No. 11 at 8-11.) Before the Court are Defendants'

20  motions to exclude Burke Sr.'s expert testimony (ECF No. 28) and for summary judgment

21  (ECF No. 39 ("Motion")), along with some related motions to seal (ECF Nos. 33, 48, 60).[1]

22  Because Plaintiffs waited too long to file this lawsuit, an agreement between an

23  organization they used to work for and Lewis precludes their copyright and unjust

24

25  ─────────────────
    [1]The Court has also reviewed the corresponding responses and replies. (ECF Nos.
26  38, 52, 54, 59.) Plaintiffs did not respond to any of Defendants' motions to seal. Plaintiffs
    also submitted some sealed documents in a manner noncompliant with the Court's Local
27  Rules and the protective order in this case. The Court addresses that noncompliance
    along with the motions to seal in this order. In addition, Defendants requested oral
28  argument on their motion for summary judgment. (ECF No. 39 at 1.) The Court declines
    their request because it finds oral argument unnecessary. *See* LR 78-1 ("All motions may
    be considered and decided with or without a hearing.").

1    enrichment claims, and as further explained below, the Court will grant Defendants'
2    Motion, deny their motion to exclude expert testimony as moot, and grant them limited
3    declaratory relief consistent with the Court's other findings in this order.

4    **II.    BACKGROUND**

5        The following facts are undisputed unless otherwise noted. Lewis develops and
6    manages apartment buildings. (ECF No. 49-1 (sealed) at 3.) Kiley Ranch Six Apartments,
7    LLC is a special purpose entity formed by Lewis to develop a residential apartment
8    complex in Sparks, Nevada, known as Homecoming at Kiley Ranch (the "Kiley Ranch
9    Project"). (*Id.*) Dragovich is an in-house engineer and architect for Lewis who used to
10   work with Plaintiffs. (*Id.*; ECF No. 55-1 (sealed) at 5.) Burke Sr. is an architect and Burke
11   Jr. is a computer operator who helps his father prepare architectural documents. (ECF
12   No. 1 at 3.)

13       In 2011, 2015, and 2017, Plaintiffs registered three copyrights in multifamily
14   apartment building designs. (ECF Nos. 40-5 at 2, 40-6 at 2, 41-6 at 2.) Meanwhile, as
15   pertinent here, Burke Sr. formed a company with William D. Pennington and John Burkett
16   called Pacific West Design-Build Services, LLC ("Pac West") in 2016. (ECF No. 42-1 at
17   3.)

18       Pac West and Lewis-affiliated companies worked together between 2016 and
19   2019. (ECF No. 49-1 (sealed) at 4.) Pac West and Lewis formalized their relationship by
20   signing the Master Consultant Agreement for Design Build Services dated June 16, 2016
21   (the "MCA"). (ECF No. 49-3 (sealed) at 2; *see also* ECF No. 49-1 (sealed) at 4.) The MCA
22   contains a key ownership term that is the subject of further discussion below. (ECF No.
23   49-3 (sealed) at 7-8.) And as also further discussed below, Pac West and Lewis
24   subsequently entered into several other agreements.

25       Pac West dissolved in 2019. (ECF No. 42-16; *see also* ECF No. 55-1 (sealed) at
26   3 (stating he was terminated by Pac West in 2019).) Lewis then retained Integrated
27   Design Build Solutions ("IDBS") to continue design of the Kiley Ranch Project. (ECF No.
28   49-1 (sealed) at 6.) Lewis' affiliate Pioneer Parkway Holding Company, LLC entered into

a Master Consulting Agreement with IDBS that, like the MCA, provided that Lewis owned any plans or drawings along with any corresponding intangible property. (*Id.* at 6; *see also* ECF No. 49-11 at 7-8.) Defendant Kiley Ranch Six Apartments, LLC later entered into a 'short form' agreement that incorporated by reference the master consulting agreement between Pioneer Parkway Holding Company, LLC and IDBS, but did not supersede or modify the ownership term. (ECF No. 49-12.)

In November 2019, Plaintiffs sued Pacific West Contractors of California, Inc., Pacific West Contractors of Nevada, IDBS, Pacific West Service Company, Pacific West Companies, LLC, Pacific West Operations, LLC, and Pacific West Operating Group, LLC, alleging infringement of the same copyright registrations at issue here. *See Burke et al. v. Pacific West Contractors of California, Inc. et al.*, Case No. 3:19-cv-00687-MMD-WGC, at ECF No. 1 (D. Nev. Filed Nov. 15, 2019) ("*Pacific West Contractors*"). Plaintiffs did not sue Lewis or its affiliated entities in that case. *See id.*

Eventually, Lewis hired Dragovich and completed the plans for the Kiley Ranch Project in-house with his help. (ECF No. 49-1 (sealed) at 7.) Lewis received approval for the Kiley Ranch Project in 2022 and began construction that year as well. (*Id.* at 7-8.) Plaintiffs sent Demir ("Ted") Erkan, a senior employee of Lewis and its affiliates, a demand letter alleging that the Kiley Ranch Project infringed their copyrights in September 2022. (*Id.* at 8; *see also* ECF No. 46-5.) Plaintiffs filed this lawsuit on May 3, 2023. (ECF No. 1.)

III.    **DISCUSSION**

The Court begins by addressing the pending motions to seal and the related issue of how Plaintiffs filed sealed documents. The Court then addresses some of the dispositive arguments raised in Defendants' Motion. Because the Court finds Defendants are entitled to summary judgment, the Court denies their motion to exclude Burke Sr.'s expert testimony (ECF No. 28) as moot.

A.    **Sealed Documents**

Defendants move to file some exhibits to their pending motions under seal, along with seeking permission to redact portions of their briefs that quote or refer directly to

those exhibits. (ECF Nos. 33 (regarding the motion to exclude expert testimony), 48 (regarding the Motion), 59 (regarding the reply filed in support of the Motion).) As noted, Plaintiffs did not oppose these motions. The Court finds the pending motions dispositive; a motion for summary judgment is obviously so, and the other motion seeks exclusion of expert testimony from a party witness, which could be dispositive. Thus, to overcome the strong presumption in favor of public access, Defendants must make particularized showings as to why these exhibits should be sealed and provide compelling reasons, supported by specific factual findings, for their request. *See Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006); *Pintos v. Pac. Creditors Ass'n,* 605 F.3d 665, 678 (9th Cir. 2010). In general, compelling reasons for sealing exist when court records might become a vehicle for improper purposes, such as "to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Demaree v. Pederson*, 887 F.3d 870, 884 (9th Cir. 2018) (quoting *Kamakana*, 447 F.3d at 1179).

Applying these standards, the Court will grant Defendants' motions to seal in part and deny them in part. The motions are denied to the extent Defendants seek to keep under seal the key ownership provision in the MCA. Defendants disclose the key elements of this term in the unredacted text surrounding the redaction of the term itself. (*See, e.g.*, ECF No. 39 at 8.) It is illogical for Defendants to disclose and rely upon key elements of this term while seeking to keep the term itself redacted. Moreover, because the Court finds this term material to resolution of this case, the public interest in disclosing it is heightened. In addition, the fact that Lewis often negotiates for ownership of architectural plans it purchases along with the corresponding intangible rights to those plans is not a trade secret. As noted, Defendants revealed that fact in their unredacted briefing. Finally, the mere fact that information is subject to a protective order does not, standing alone, constitute good cause for filing that information under seal. *See Heath v. Tristar Prod., Inc.*, Case No. 2:17-cv-02869-GMN-PAL, 2019 WL 12311995, at *2 (D. Nev. Apr. 17, 2019). The Court accordingly orders Defendants to re-file unredacted versions of the MCA and its briefs that remove redactions of quotations of the MCA within 10 days.

1  And because Defendants' first motion to seal only seeks to file the MCA under seal, that

2  motion is denied. (ECF No. 33.)

3          However, the Court finds that Defendants have otherwise presented compelling

4  reasons supporting sealing the rest of the information they seek to file under seal.

5  Defendants otherwise seek to seal contracts with confidential terms and financial

6  information regarding their payments to other parties they have contracted with to develop

7  apartment complexes. (ECF Nos. 48, 60.) And Defendants' third motion to seal largely

8  seeks to file under seal the same information they moved to seal in their second motion

9  to seal. (*Id.*) Defendants provide specific, factual reasons for each document they seek

10 to file under seal. (ECF No. 48 at 3-5.) Defendants also proffered Erkan's declaration

11 along with this motion, in which he asserts that the contracts and financial documents

12 Defendants seek to file under seal contain sensitive nonpublic information that could harm

13 Defendants' commercial standing if disclosed, including but not limited to trade secret

14 information. (ECF No. 48-1 at 1-2.) Documents containing "proprietary, trade secret, and

15 technical information" may properly be filed under seal. *Amarin Pharma, Inc. v. W.-Ward*

16 *Pharms. Int'l Ltd.*, 407 F. Supp. 3d 1103, 1119 (D. Nev. 2019) (citation omitted). In sum,

17 the Court grants Defendants' second and third motions to seal except to the extent they

18 seek to file the MCA and references to it under seal. (ECF Nos. 48, 60.)

19          Plaintiffs did not file any motions to seal but included redactions in their response

20 to the Motion and went ahead and filed their exhibits to it under seal. (ECF Nos. 54, 55

21 (and exhibits thereto), 56 (and exhibits thereto).) The approach Plaintiffs took violates LR

22 IA 10-5 along with the protective order Plaintiffs signed, and which United States

23 Magistrate Judge Craig S. Denney entered. (ECF No. 23 at 10-12.) Plaintiffs have

24 accordingly no excuse for their noncompliance with the Court's Local Rules and an order

25 that governs in this very case. The Court thus orders Plaintiffs to file a motion to seal

26 within 10 days consistent with LR IA 10-5 and *Kamakana*, 447 F.3d at 1178-79, justifying

27 the sealing decisions they already made. The Court further orders Plaintiffs to file, under

28 seal and at the same time, an unredacted version of their response to the Motion, which

1  they do not appear to have done. The Court will issue a subsequent order on Plaintiffs'

2  motion to seal once they file it.

3           **B.    Summary Judgment Motion**

4           Defendants raise several, alternative arguments in their Motion as to why they are

5  entitled to summary judgment. The Court addresses below only some of those

6  arguments, but overall agrees that Defendants are entitled to summary judgment on

7  Plaintiffs' claims against them. The Court then addresses Defendants' counterclaims.

8                   **1.    Statute of Limitations**

9           Defendants first argue they are entitled to summary judgment on Plaintiffs'

10  copyright infringement claim because it is time barred. (ECF No. 39 at 15-16.) They more

11  specifically argue that Plaintiffs stated in verified discovery responses in *Pacific West*

12  *Contractors* that they believed the Kiley Ranch apartment buildings were infringing as of

13  August 12, 2019—or more than three years before they filed suit. (*Id.*) Plaintiffs concede

14  that they "did suspect and believe" that their former business partners were using their

15  designs for the Kiley Ranch Project in 2019, but contend a genuine dispute of material

16  fact precludes summary judgment on this issue because they submitted a declaration

17  from Burke Sr. with their opposition to the Motion in which he states Plaintiffs thought

18  Defendants would not continue using their designs after Defendants fired their mutual,

19  former business partners. (ECF No. 54 at 8-9.) Defendants reply that the Court should

20  disregard Burke Sr.'s declaration because it is self-serving and unreasonable, and other

21  evidence before the Court supports that he was aware of the potentially infringing nature

22  of the Kiley Ranch apartments in August 2019. (ECF No. 61 (sealed) at 7-8.)

23          "7 U.S.C. § 507 establishes the statute of limitations under the Copyright Act: 'No

24  civil action shall be maintained under the provisions of this title unless it is commenced

25  within three years after the claim accrued.'" *Starz Ent., LLC v. MGM Domestic Television*

26  *Distribution, LLC*, 39 F.4th 1236, 1239 (9th Cir. 2022). "[T]he three-year limitations period

27  runs from the date the claim accrued, *i.e.*, from the date when the copyright holder knew

28  or should have known of the infringement." *Id.* at 1244. Either actual or constructive

1   knowledge triggers the statute of limitations. *Oracle Am., Inc. v. Hewlett Packard Enter.*

2   *Co.*, 971 F.3d 1042, 1047 (9th Cir. 2020). And as to constructive knowledge, suspicion of

3   copyright infringement requires the plaintiff to investigate further. *See id.* at 1047-48.

4           Plaintiffs had actual knowledge triggering the copyright statute of limitations when

5   they wrote in discovery responses in *Pacific West Contractors* (while represented by the

6   same attorney who represents them here) that, "as of August 12, 2019," "the Kiley Ranch

7   Project in Sparks, Nevada" was infringing their copyrights. (ECF No. 43-4 at 7.) Indeed,

8   the same attorney who represents Plaintiffs in this case wrote in the next discovery

9   response, "[o]n March 26, 2019, Ted Erkan of Lew Communities advised the Plaintiffs

10  that the Defendants prepared design and construction documents for the Veteran's

11  Parkway Project and the Kiley Ranch Project, utilizing the Burke B-Product and the Burke

12  Townhouse products." (*Id.* at 7-8) This appears to concede that Plaintiffs were aware of

13  the potentially infringing nature of the Kiley Ranch Project before the August 2019 date.

14  Thus, Plaintiffs affirmatively contended that the Kiley Ranch Project was violating their

15  copyrights on August 12, 2019, at the latest. They had actual notice.

16          There is also an apparent contradiction between Burke Sr.'s declaration and his

17  counsel's citation to it in opposition to the Motion regarding when and why Plaintiffs began

18  to suspect that the Kiley Ranch Project infringed their copyrights. Burke Sr. says, "[i]n

19  early March 2022, Burke Jr. and I happened to drive by the Kiley Ranch Project and noted

20  that it looked similar to their Harvest 2B design, specifically the foundations." (ECF No.

21  55-1 (sealed) at 6.) His counsel, citing that declaration, says, "[t]he Burkes were diligent

22  in their investigative efforts and only gained knowledge of the Lewis Parties' infringement

23  on March 10, 2022, when the Burkes received the permitted plans that were a direct copy

24  of the Burkes' Harvest 2B design plans." (ECF No. 54 at 9.) Happening to drive by and

25  receiving permitted plans are not the same thing. This contradiction renders Burke Sr.'s

26  assertion of this alternative date for actual notice unreasonable. *See Villiarimo v. Aloha*

27  *Island Air, Inc.*, 281 F.3d 1054, 1065 n.10 (9th Cir. 2002) ("At summary judgment, this

28

1    court need not draw all possible inferences in [the moving party's] favor, but only all
2    reasonable ones.") (citation omitted).

3         Burke Sr. otherwise attempts to render the discovery response from *Pacific West*
4    *Contractors* nondispositive by pointing to a statement included in his declaration
5    submitted along with his response to Defendants' Motion that, "Burke Jr. and I reasonably
6    believed that, in light of the litigation against Pac West and IDBS, the Lewis Parties would
7    not willfully infringe on the Burke Designs." (ECF No. 55-1 (sealed) at 5-6.) And Burke Sr.
8    otherwise supports his statement that he and Burke Jr. had no knowledge that
9    Defendants would use their designs "since Erkan was deposed on June 15, 2021, as part
10   of the Burkes' case against Pac West." (*Id.* at 5.) But these statements do not directly
11   contradict the discovery responses their attorney submitted on their behalf in *Pacific West*
12   *Contractors* that the same person (Erkan) told them back in March 2019 that Defendants
13   (or some related entities) were using their designs in the Kiley Ranch Project. Thus,
14   Burke, Sr.'s declaration does not create a genuine dispute of material fact as to whether
15   Plaintiffs had actual knowledge of the alleged infringement on August 12, 2019, at the
16   latest.

17        And even if it did, the same admission in the discovery response filed in *Pacific*
18   *West Contractors* put Plaintiffs on constructive notice also sufficient to trigger the three
19   year statute of limitations. (ECF No. 43-4 at 7-8 (stating they suspected the Kiley Ranch
20   Project infringed their copyrights).) "'[S]uspicion' of copyright infringement 'place[s] upon
21   [the plaintiff] a duty to investigate further into possible infringements of [its] copyrights.'"
22   *Oracle*, 971 F.3d at 1048. Because Plaintiffs said they suspected the Kiley Ranch Project
23   violated their copyrights as of August 12, 2019, they had a duty to investigate further. *See*
24   *id.* It accordingly was not reasonable for Plaintiffs to decline to undertake any further
25   investigation until they happened to drive by a couple of years later. (ECF No. 55-1
26   (sealed) at 6.) "Although 'summary judgment is generally an inappropriate way to decide
27   questions of reasonableness,' it 'is appropriate 'when only one conclusion about the
28   conduct's reasonableness is possible.'" *Oracle*, 971 F.3d at 1048. Such is the case here.

1    Conducting no further investigation of suspected infringement is unreasonable. And citing
2    Burke Sr.'s declaration, Plaintiffs offer only one internally contradictory sentence to resist
3    the reasonable conclusion that Plaintiffs were required to further investigate infringement
4    at Kiley Ranch when they suspected it: "The Lewis Parties' contention that the Burkes
5    failed to investigate their suspicion that the Burke Designs were being used on the Kiley
6    Ranch Project is belied by the fact that following the Pac West litigation, the Burkes had
7    no knowledge of the Lewis Parties' design plans for the Kiley Ranch Project." (*Id.* at 9.)
8    The latter half of this sentence does not refute the premise summarized in the former.
9    Said otherwise, this sentence simply does not address Plaintiffs' duty to investigate
10   further—it instead merely concedes that they did not. Plaintiffs accordingly do not
11   genuinely dispute that they failed to discharge their duty to investigate suspected
12   copyright infringement back in 2019.

13        In sum, Plaintiffs had at least constructive knowledge sufficient to trigger the
14   copyright statute of limitations as of August 12, 2019. (ECF No. 43-4 at 7-8.) Plaintiffs did
15   not file this case until May 3, 2023. (ECF No. 1.) That is more than 3 years. Plaintiffs'
16   copyright infringement claim is accordingly time barred. *See Starz*, 39 F.4th at 1239
17   (restating that the limitations period is three years).

18                          **2.    Laches**

19        In addition, and alternatively, Defendants contend both of Plaintiffs' claims are
20   barred by the equitable doctrine of laches. (ECF No. 39 at 18-19.) Plaintiffs rely on the
21   same date the Court rejected above as to the statute of limitations argument (when they
22   drove by the Kiley Ranch Project) to argue they did not unreasonably delay in filing this
23   case and otherwise counter that Defendants have insufficiently established prejudice
24   resulting from Plaintiffs' delay. (ECF No. 54 at 11-12.) The Court agrees with Defendants
25   that both of Plaintiffs' claims are alternatively barred by the equitable doctrine of laches,
26   so Defendants are entitled to summary judgment on both claims.

27        "Laches is an equitable defense that prevents a plaintiff, who 'with full knowledge
28   of the facts, acquiesces in a transaction and sleeps upon his rights.'" *Danjaq LLC v. Sony*

1    *Corp.*, 263 F.3d 942, 950-51 (9th Cir. 2001) (citations omitted). Laches has two elements:

2    (1) unreasonable delay by the plaintiff, causing; (2) prejudice to the defendant. *See id.* at

3    951. But laches may not be used as a complete bar to a copyright infringement suit—

4    unless extraordinary circumstances are present—if the plaintiff files suit within the

5    Copyright Act's three-year statute of limitations. *See Petrella v. Metro-Goldwyn-Mayer,*

6    *Inc.*, 572 U.S. 663, 686 (2014).

7        *Petrella* accordingly does not prohibit the Court from alternatively granting

8    Defendants summary judgment on Plaintiffs' copyright infringement claim based on

9    laches because, as the Court held above as to the statute of limitations argument,

10   Plaintiffs waited for more than three years after they suspected that the Kiley Ranch

11   Project infringed their copyrights to file this action. *See id.* The Court accordingly analyzes

12   the two prongs of laches as presented in the Motion—and finds both are satisfied.

13       First, Plaintiffs unreasonably delayed in suing Defendants over the Kiley Ranch

14   Project. As the Court found above, Plaintiffs contended that the Kiley Ranch Project

15   infringed their copyrights on August 12, 2019, at the latest, yet Plaintiffs waited until May

16   3, 2023, to file this case. The Court accordingly rejects Plaintiffs' corresponding argument

17   that they did not delay because they only discovered the infringement when they drove

18   by the Kiley Ranch apartments on March 10, 2022. (ECF No. 54 at 11.) That argument is

19   insufficiently supported and unpersuasive for the reasons provided above in the statute

20   of limitations section. Moreover, Plaintiff's lawsuit against PacWest did not "stop the clock"

21   on laches, *see Danjaq*, 263 F.3d at 953, and instead illustrates the unreasonableness of

22   Plaintiff's delay. Plaintiffs contended Kiley Ranch was infringing, so why did they not sue

23   the developer they were aware was building it at the time when they sued other

24   defendants over the same project? (ECF No. 40-4 at 16 (agreeing that this lawsuit

25   accuses Defendants' Kiley Ranch Project of infringing his copyrights), 52 (explaining that

26   he was one of the owners of PacWest, and PacWest contracted with Lewis to build the

27   Kiley Ranch Project).) Again, and as explained above, Plaintiffs have no reasonable

28   explanation.

Second, Plaintiffs' delay in filing this lawsuit prejudiced Defendants. Defendants reasonably explain in their Motion that they would have paused development on the Kiley Ranch Project if they had been aware of Plaintiffs' claims and resolved them before investing significant sums of money in the project. (ECF No. 39 at 19.) Plaintiffs unpersuasively attempt to dismiss this proffered prejudice by calling it self-serving, but do not attack its logic. Indeed, *Petrella* described a Sixth Circuit case with analogous facts as an example of the sort of extraordinary circumstances under which a court could permissibly apply the doctrine of laches even if the plaintiff had filed suit within the three-year statute of limitations. *See Petrella*, 572 U.S. at 685-86. The *Petrella* court described the Sixth Circuit's affirmance of the district court's judgment that the plaintiff would not be entitled to knock the allegedly infringing apartment building down because, "the plaintiffs knew of the defendants' construction plans before the defendants broke ground, yet failed to take readily available measures to stop the project; and the requested relief would 'work an unjust hardship' upon the defendants and innocent third parties." *Id.* at 686. Said otherwise, *Petrella* took it as a given that waiting for years while the defendants built the apartment building would prejudice the defendants. The Court rules similarly here. Plaintiffs' delay prejudiced Defendants because they must now defend against this lawsuit regarding building plans after the building is under construction. And indeed, Plaintiffs waited more than three years, which is longer than in the Sixth Circuit case described in *Petrella* and outside the statute of limitations period.

In sum, the doctrine of laches alternatively bars Plaintiffs' copyright infringement claim under the circumstances present here. In addition, laches can also bar an unjust enrichment claim. *See Paskvan v. Klier*, No. 2:08-CV-01144-KJD, 2011 WL 1131296, at *4 (D. Nev. Mar. 24, 2011); *Dam v. Gen. Elec. Co.*, 265 F.2d 612, 614 (9th Cir. 1958) (affirming the application of laches to bar an unjust enrichment claim). For the same reasons that laches bars Plaintiffs' copyright infringement claim against Defendants—as analyzed above—it also bars Plaintiffs' unjust enrichment claim against Defendants. The application of the laches doctrine accordingly supplies one, alternative basis for the

1    Court's finding that Defendants are entitled to summary judgment on both of Plaintiffs'

2    claims against Defendants.

3                          **3.    Master Consulting Agreement**

4          Defendants otherwise argue the MCA between Lewis and PacWest means they

5    are entitled to summary judgment on both of Plaintiffs' claims because it is the written

6    agreement governing the pertinent relationship—precluding an unjust enrichment claim—

7    and a key term in the MCA assigns ownership of the Kiley Ranch Project plans and any

8    corresponding intangible property rights to Lewis. (ECF No. 39 at 19-21.) Plaintiffs point

9    to various other agreements in response to these arguments, but none of them create a

10   genuine dispute of material fact. (ECF No. 54 at 10-11, 12-13.) The Court first explains

11   why its interpretation of the MCA provides another, alternative basis for the Court's finding

12   that Defendants are entitled to summary judgment on Plaintiffs' copyright infringement

13   claim, and then moves on to its impact on Plaintiffs' unjust enrichment claim.

14                          **a.    Copyright Infringement**

15         The relationship between Lewis and PacWest is governed by the MCA. (ECF Nos.

16   49-1 (sealed) at 4, 40-4 at 54 (describing the MCA as the 'original agreement' between

17   PacWest and Lewis).) Burke Sr. was one of the owners of PacWest and worked with

18   Lewis through the MCA. (ECF No. 40-4 at 52 (explaining that he was one of the owners

19   of PacWest, and PacWest contracted with Lewis to build the Kiley Ranch Project).) It is

20   further undisputed that the MCA provides that Lewis owned any plans prepared by

21   PacWest and any corresponding intangible property. (ECF No. 49-3 (sealed) at 7-8

22   (ownership clause), 12 (signed by Erkan and Pennington), 49-1 at 4-5 (swearing that the

23   MCA gave Lewis ownership over plans and corresponding intangible property in clause

24   16 and was not superseded by other agreements between the parties), 40-4 at 54 ("[T]he

25   original consultant agreement gave Lewis ownership of the plans.").) Intangible property

26   rights in architectural plans logically include copyrights in those plans. *See Sierra Club*

27   *Inc. v. Comm'r*, 86 F.3d 1526, 1531 (9th Cir. 1996) (describing copyright as an example

28   of an intangible property right). Defendants accordingly cannot be infringing Plaintiffs'

                                          12

1    copyrights by using plans that Plaintiffs created for them under the MCA because the

2    MCA gives Defendants a right to use them, along with ownership of any corresponding

3    copyrights. (ECF No. 49-3 (sealed) at 7-8.)

4        Plaintiffs attempt to resist this conclusion by pointing to various other agreements

5    between Lewis and PacWest, but the only agreement the parties proffer that relates to

6    the Kiley Ranch Project does not purport to supersede clause 16 of the MCA giving Lewis

7    ownership of any plans PacWest produced for Lewis. (ECF No. 49-9 (sealed); *see also*

8    *id.* at 2 ("Kiley Village 20" located at "SW Corner Kiley Parkway and Windmill Farms

9    Parkway" in Sparks); *see* ECF No. 49-1 at 5 ("On December 27, 2018, Lewis entered into

10   a Consultant Work Agreement with Pac West relating to the Kiley Ranch Project, which

11   incorporated the terms and conditions of the MCA, including the provision expressly

12   granting Lewis ownership rights to the plans.").)

13       The other agreements Plaintiffs identify in response to the Motion do not concern

14   the Kiley Ranch Project and thus do not somehow override the MCA as to Kiley Ranch.

15   The addendum Plaintiffs identify (ECF No. 54 at 12 (referring to Exhibit U)) relates to a

16   job identified in the addendum as, "70030180 Double R" (ECF No. 42-8 at 2). The

17   conclusion that this addendum only modified the parties' agreement as to the Double R

18   project is consistent with Erkan's declaration, where he states, "[e]ach project would have

19   a work agreement that applied to that particular project and referred to the MCA." (ECF

20   No. 49-1 at 4.) Plaintiffs also mention a work agreement attached as exhibit T to the

21   Motion (ECF No. 54 at 12), but that agreement also relates to, "70030180 Double R" (ECF

22   No. 49-4 (sealed) at 2), not Kiley Ranch. Moreover, at his deposition, Burke Sr. described

23   Double R as a distinct project from the Kiley Ranch Project. (ECF No. 40-4 at 32, 54-55.)

24   The Court accordingly does not find that agreements about the Double R project would

25   modify the MCA as to the Kiley Ranch Project.

26       Plaintiffs otherwise point to exhibits C and E, but the agreements they are

27   describing do not appear to be exhibits C and E to the Motion. (ECF No. 54 at 12; *see*

28   *also* ECF Nos. 40-3, 40-5.) The Court accordingly infers Plaintiffs are referring to exhibits

C and E to their response to the Motion. That exhibit C is a licensing agreement between Pacific West Design Build Services, LLC and Pioneer Parkway Apartments II, LLC, which applies to a property located in "a portion of Parcel 2 of Parcel Map 5222, recorded as File No. 4565232 in the Office of the Washoe County Recorder, State of Nevada, on March 1, 2016." (ECF No. 55-3 (sealed) at 2, 6.) The Court searched for File No. 456232 on the website of the office of the Washoe County Recorder and takes judicial notice of the fact that it does not relate to the Kiley Ranch Project—it describes a site in South Reno off Veterans Parkway. *See* Washoe County Recorder, Document Search and Copies (Last Accessed Feb. 5, 2025), https://icris.washoecounty.us/ssrecorder/document/DOC905S725?search=DOCSEARCH1503S1. *See also Maxfield v. IndyMac Mortg. Servs.*, 700 F. App'x 731, 731 (9th Cir. 2017) ("The district court did not abuse its discretion in taking judicial notice of documents filed with the county recorder's office."). And the agreement filed as exhibit E to Plaintiffs' response is between Lewis Management Corp. and two entities with Pacific West in their name, not any of the entities that are Plaintiffs or Defendants in this case. (ECF No. 55-5 (sealed).) The Court accordingly does not find that agreement could have impacted ownership over the plans used for the Kiley Ranch Project, particularly considering that there are agreements governing that project and described above—the MCA and the addendum to it that specifically listed Kiley Ranch as the project it applied to.

Plaintiffs finally point to Burke Sr.'s declaration filed with Plaintiffs' response to the Motion in which he asserts, "[i]t was never my intent to sell ownership of the Burke Designs (including adaptive or derivative works, i.e. the Harvest 2B plans) to Lewis." (ECF No. 54 at 13; *see also* ECF No. 55-1 (sealed) at 6 (including the quoted language).) But Burke Sr. otherwise testified at his deposition that William Pennington was another member of PacWest, and Burke Sr. was aware that Pennington gave ownership of the plans to Lewis in the MCA. (ECF No. 40-4 at 54.) Burke Sr.'s intent is accordingly immaterial because Pennington could bargain away the rights that he apparently did, and Burke Sr. was aware that he did (acknowledging, of course, that Burke Sr. viewed it as

14

1  an issue). (*See id.*; *see also* ECF No. 42-1 at 4 (defining Pennington as a Manager), 16

2  ("Any Person dealing with the Company may rely upon any instrument executed by any

3  one (1) of the Managers without inquiring into the approval of the transaction pursuant to

4  Section 11.1 and elsewhere in this Agreement.").) In plain English, and from Plaintiffs'

5  perspective, Pennington made a bad deal on Plaintiffs' behalf. Plaintiffs' remedy—which

6  they availed themselves of to some extent in *Pacific West Contractors*—is against

7  Pennington and PacWest, not against Defendants.

8      In sum, Plaintiffs cannot prevail against Defendants for copyright infringement

9  because the MCA gave Lewis ownership over the plans PacWest prepared for the Kiley

10  Ranch Project along with corresponding intangible property. Defendants are accordingly

11  entitled to summary judgment on Plaintiffs' copyright infringement claim for this alternative

12  reason as well.

13              **b.    Unjust Enrichment**

14      And because the MCA exists, Defendants are also entitled to summary judgment

15  on Plaintiffs' unjust enrichment claim. "An action based on a theory of unjust enrichment

16  is not available when there is an express, written contract, because no agreement can be

17  implied when there is an express agreement." *Leasepartners Corp. v. Robert L. Brooks*

18  *Tr. Dated Nov. 12, 1975*, 942 P.2d 182, 187 (Nev. 1997) (citation omitted). The MCA is

19  the written, express agreement that governs the relationship between the parties. Indeed,

20  the Nevada Supreme Court has even held that a written agreement between parties to

21  an agreement regarding a construction project barred an unjust enrichment claim against

22  the ultimate property owner even though the property owner was not a party to the

23  contract. *See Korte Constr. Co. v. State on Rel. of Bd. of Regents of Nevada Sys. of*

24  *Higher Educ.*, 492 P.3d 540, 544 (Nev. 2021). Thus, the MCA bars Plaintiffs' unjust

25  enrichment claims against all Defendants.

26              **4.    Defendants' Counterclaims**

27      As noted at the outset, Defendants counterclaimed that Plaintiffs' copyrights are

28  invalid and not infringed by Kiley Ranch. (ECF No. 11 at 8-11.) Defendants accordingly

1   also move for summary, declaratory judgment on these claims in their Motion. (ECF No.

2   39 at 27-28.) Plaintiffs counter by essentially incorporating by reference their arguments

3   resisting summary judgment. (ECF No. 54 at 19-20.) Because the Court reached the non-

4   infringement but not invalidity arguments above, the Court will grant Defendants a

5   corresponding declaratory judgment of non-infringement based on the ownership term in

6   the MCA. The Court accordingly grants in part, and denies in part, the portion of

7   Defendants' Motion seeking summary judgment on their declaratory judgment claims.

8   **IV.    CONCLUSION**

9           The Court notes that the parties made several arguments and cited to several

10  cases not discussed above. The Court has reviewed these arguments and cases and

11  determines that they do not warrant discussion as they do not affect the outcome of the

12  motions before the Court.

13          It is therefore ordered that Defendants' motion for summary judgment (ECF No.

14  39) is mostly granted as specified herein.

15          It is further ordered that Defendants are entitled to summary judgment on Plaintiffs'

16  copyright infringement and unjust enrichment claims.

17          It is further ordered that the Kiley Ranch Project in Sparks, Nevada does not

18  infringe Plaintiffs' copyrights asserted in this case.

19          It is further ordered that Defendants' motion to exclude expert testimony (ECF No.

20  28) is denied as moot.

21          It is further ordered that Defendants' first motion to seal (ECF No. 33) is denied.

22          It is further ordered that Defendants' second motion to seal (ECF No. 48) is granted

23  in part, and denied in part, as specified herein.

24          It is further ordered that Defendants' third motion to seal (ECF No. 60) is granted

25  in part, and denied in part, as specified herein.

26          It is further ordered that Defendants must file an unsealed version of the MCA and

27  versions of its briefs that remove redactions of content excerpted from the MCA within 10

28  days.

It is further ordered that Plaintiffs must file a motion to seal within 10 days consistent with LR IA 10-5 and *Kamakana*, 447 F.3d at 1178-79, justifying the sealing decisions they already made.

It is further ordered that Plaintiffs must also file, under seal, an unredacted version of their response to the Motion at the same time as their motion to seal.

The Clerk of Court is directed to enter judgment accordingly—in Defendants' favor—and close this case.

DATED THIS 5th Day of February 2025.

_____

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE