UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

DONALD J. BURKE, et al.,                              Case No. 3:23-cv-00184-MMD-CSD

                              Plaintiffs,                    ORDER

    v.

LEWIS INVESTMENT COMPANY OF
NEVADA, LLC, et al.,

                              Defendants.

## I.    SUMMARY

Plaintiffs Donald J. Burke ("Burke Sr.") and Donald W. Burke ("Burke Jr.") sued Defendants Lewis Investment Company of Nevada, LLC ("Lewis"), Kiley Ranch Six Apartments, LLC, and Luke Dragovich for alleged copyright infringement and unjust enrichment regarding the development of an apartment complex known as Kiley Ranch in Sparks, Nevada that allegedly infringed on copyrighted architectural plans developed by Plaintiffs. (ECF No. 1.) Defendants counterclaimed that Plaintiffs' copyrights were invalid and not infringed by Kiley Ranch and moved for summary judgement. (ECF Nos. 11 at 8-11; 39.) The Court granted Defendants' motion for summary judgement and partial declaratory relief. (ECF No. 64 at 16.) Before the Court is Defendants' motion for attorneys' fees and costs seeking $838,675.00 in fees and $127,631.82 in costs from Plaintiffs and Plaintiffs' counsel ("Counsel"). (ECF Nos. 75 ("Motion"); 74; 81 at 2.)[1] Defendants also filed a Bill of Costs (ECF No. 74), which Plaintiffs and Counsel object to. (ECF No. 97, 98.)[2] Because the Court finds Plaintiffs and Counsel did not act in bad

---

[1]Plaintiffs and Counsel responded to the Motion respectively (ECF Nos. 99, 96.) Defendants filed a reply. (ECF No. 101.)

[2]Defendants replied to Plaintiffs' and Counsel's response. (ECF No. 100.)

1    faith—and as further explained below—the Court denies the Motion and sustains Plaintiffs

2    and Counsel's objections to the Bill of Costs.

3    **II.    BACKGROUND**

4    The Court incorporates the facts recited in the order addressing Defendants'

5    motion for summary judgment. (ECF No. 64 at 2-3.) As relevant to the Motion, Plaintiffs

6    filed this lawsuit in 2023. (ECF No. 1.) For nearly a year and a half, Plaintiffs and

7    Defendants engaged in extensive discovery and failed settlement negotiations. (ECF No.

8    96 at 7-17.) In May 2024, Defendants sent an offer of judgement letter to Plaintiffs. (ECF

9    No. 78-3.). Plaintiffs declined the offer. (ECF No. 76-1 at 7.) In September, Defendants

10   moved for summary judgement. (ECF No. 39.) The Court granted Defendants' motion,

11   including partial declaratory judgement. (ECF No. 64.) In February 2025, Defendants

12   moved for attorneys' fees and costs. (ECF No. 75.)

13   **III.    DISCUSSION**

14   "[T]he general rule in the United States" is that "litigants must pay their own

15   attorney's fees." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 415 (1978) (citation

16   omitted). "Congress has provided only limited exceptions to this rule 'under selected

17   statutes….'" *Id.* (citation omitted). Among these limited exceptions is section 505 of the

18   Copyright Act. *See* 17 U.S.C. § 505. Additionally, Rule 68 of both the Federal and Nevada

19   Rules of Civil Procedure allow a party who made a rejected offer of judgment to obtain

20   post-offer costs and expenses. *See* Fed. R. Civ. P. 68(e)(d); Nev. R. Civ. P. 68(f)(1)(B).

21   Federal courts also possess the inherent authority "not conferred by rule or statute," to

22   sanction a party through imposition of the opposing party's legal fees and costs."

23   *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017). Finally, the Court is

24   authorized by statute to hold a party's counsel personally liable for "excess costs,

25   expenses, and attorneys' fees." 28 U.S.C. § 1927. As elaborated below, the Court finds

26   that none of these grounds for awarding attorneys' fees are applicable here. As

27   authorized by statute and Local Rules, the Court or clerk may tax certain litigation costs

28

2

1    of the prevailing party. *See* 28 U.S.C. § 1920; LR 54-1 through 54-11. The Court

2    addresses below Plaintiffs' and Counsel's objections to Defendants' filed Bill of Costs.

3        **A.    The Copyright Act**

4            The Court may "in its discretion" award attorneys' fees and costs to the prevailing

5    party in copyright claims. *See* 17 U.S.C. § 505. In *Fogerty v. Fantasy, Inc.*, the Supreme

6    Court outlined factors that "may be used to guide courts' discretion" in determining

7    whether to award fees and costs. 510 U.S. 517, 534 n.19 (1994). These non-exclusive

8    factors include "frivolousness, motivation, objective unreasonableness (both in the factual

9    and in the legal components of the case), and the need in particular circumstances to

10   advance considerations of compensation and deterrence." *Id.* (quoting *Lieb v. Topstone*

11   *Indus., Inc.,* 788 F.2d 151, 156 (3rd Cir. 1986)). The Ninth Circuit instructs district courts

12   to also consider, "the degree of success obtained, the purposes of the Copyright Act, and

13   whether the chilling effect of attorneys' fees may be too great or impose an inequitable

14   burden on an impecunious plaintiff." *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 675

15   (9th Cir. 2017) (citation omitted). The Court reviews each factor in turn.

16       **1.    Frivolousness[3]**

17           A frivolous claim favors awarding attorneys' fees. *See Fogerty*, 510 U.S. at 534

18   n.19. "[A] frivolous claim under the Copyright Act is one that, in either the factual or legal

19   assertions, is clearly baseless, involving fantastic or delusional scenarios. Put another

20   way, a case is deemed frivolous only when the result is obvious or the arguments are

21   wholly without merit." *Perfect 10, Inc. v. Giganews, Inc.*, No. CV 11-07098-AB (SHX),

22   2015 WL 1746484, at *8 (C.D. Cal. Mar. 24, 2015), *aff'd*, 847 F.3d 657 (citations omitted).

23

24       [3]Defendants address frivolousness and objective reasonableness together, citing
     *Glacier Films (USA), Inc. v. Turchin*. (ECF No. 75 at 13); 896 F.3d 1033, 1042-43 (9th
25   Cir. 2018) (analyzing reasonableness and frivolousness under the same heading). But
     there, the Ninth Circuit ultimately held the district court abused its discretion in applying
26   these factors partly because the lower court did not analyze objective reasonableness
     separately. *Glacier Films*, F.3d at 1042-43; *see also Mattel, Inc v. MGA Ent., Inc.*, 705
27   F.3d 1108, 1111 (9th Cir. 2013) (distinguishing the objective reasonableness,
     frivolousness, and bad faith factors). While "courts have not articulated precisely" the
28   difference between the two, "the standard for objective unreasonableness is somewhat
     lower than that for complete frivolity." *Perfect 10 v. Giganews*, 2015 WL 1746484, at *11,
     *aff'd*, 847 F.3d 657. Accordingly, the Court analyzes the two factors separately.

Defendants claim Plaintiffs and Counsel "*objectively knew*" the copyright claim was time-barred from the outset. (ECF No. 75 at 13-14) (emphasis in original). While Defendants effectively persuaded the Court that the 2019 discovery responses from *Pacific West Contractors* demonstrated at least constructive knowledge triggering the statute of limitations, this does not prove that either Plaintiffs or Counsel knew their claim was time-barred and frivolously continued litigated regardless. (ECF Nos. 64 at 6-9; 96 at 19-20; 99 at 4-66.) Similarly, Defendants claim Plaintiffs and Counsel "knew the claims were fatally flawed" because they had access to the various contracts which the Court ultimately determined demonstrated Defendants' ownership over the intellectual property at issue. (ECF No. 75 at 14.) But access to and knowledge of the documents the Court relied on in issuing its opinion does not prove Plaintiffs or Counsel brought this action frivolously. In his briefing, Counsel explains the rationale behind pursuing these claims despite these factual grounds. (ECF No. 96 at 4-7.) As he acknowledges, the Court was not persuaded by his arguments. (ECF No. 96 at 2, 19 n.10.) But while Defendants may have outlined their own persuasive legal arguments to Plaintiffs, the Court does not find Plaintiffs' arguments to be "so obviously without merit as to be frivolous." *Perfect 10 v. Giganews*, 2015 WL 1746484, at *8, *aff'd*, 847 F.3d 657. Therefore, this factor ultimately weighs against awarding fees.

### 2.    Motivation

Improperly motivated litigation weighs towards awarding attorneys' fees. *See id*. at *9 (citing *Fogerty*, 510 U.S. at 527). A party that litigates with the subjective motivation of "forc[ing] a settlement" qualifies as improper motivation under the Copyright Act. *See Shame On You Prods., Inc. v. Banks*, 893 F.3d 661, 668 (9th Cir. 2018). Actions such as "obstructionist conduct during discovery and failure to confer in good faith" may denote this improper motive. *Id*.

Defendants argue "all the evidence indicates" that Plaintiffs and Counsel "pursued this action for the [improper] purpose of extracting a settlement." (ECF No. 75 at 15.) To support this argument, Defendants cite to Plaintiffs' prior settlement in the *Pacific West*

*Contractors*, an "unreasonably high settlement demand," and "abusive discovery tactics." (*Id*.) The Court is not persuaded that the evidence here demonstrates a "bad faith purpose." (*Id*.)

First, the previous settlement does not tend to show Plaintiffs brought this suit with the improper motive of extracting an unwarranted settlement agreement here. Plaintiffs did not file this lawsuit until over a year and a half after reaching the *Pacific West Contractors* settlement. (ECF Nos. 1; 96-5). This timeline does not suggest, as Defendants claim, that Plaintiffs turned around after this settlement in search of "deep[er] pockets." (ECF No. 75 at 3, 6 n.10.) Second, Defendants incorrectly state the amount of Plaintiffs' initial settlement offer. (*Compare* ECF No. 75 at 5, 21 n.28 ("[T]he Burkes' initial settlement demand totaled approximately $1.4 Million….") *with* ECF No. 75-3 ("[T]he Burkes are willing at this time only to accept $538,800.")). The record of settlement negotiations indicates an ultimately failed back-and-forth between the parties, not the hyperbolic extraction described by Defendants. (ECF Nos. 75 at 6-8; 96 at 7-10.) Plaintiffs' and Counsel's interest in resolving the dispute through settlement does not imply an improper motivation. (ECF Nos. 75 at 7; 96 at 9.)  Finally, Plaintiffs' discovery requests to the multiple defendants, which Defendants answered and never previously objected to, do not qualify as "abusive" such that that they imply improper motivation. (ECF Nos. 75 at 3, 6-7, 15, 18; 96 at 11-13.)

Defendants point to Plaintiffs' failure to produce the *Pacific West Contractors* settlement agreement as further evidence of "[i]mproper [p]urpose." (ECF No. 75 at 10.) But this is distinguishable from the failure to produce relevant documents in *Shame on You Productions v. Banks*, which led the Ninth Circuit to affirm the district court's finding of improper motive. 893 F.3d at 668. There, the plaintiff violated Federal Rule of Civil Procedure 26(a)(1)(A)(ii) and a court order by failing to produce the relevant document. *Id.* Here, the prior settlement was verbally requested with evidence of only one follow-up email. (ECF Nos. 75 at 10; 75-1 at 8-9.) If Defendants truly believed the waiver provision applied broadly and released Plaintiffs' claims, they could have requested production

through a formal discovery request. But Defendants did not and Counsel did not refuse to comply. (ECF No. 96 at 16.) Counsel's failure to produce the prior settlement agreement until now may be negligent but does not indicate subjective bad faith.[4] Therefore, this factor weighs against granting attorneys' fees.

### 3.    Objective Unreasonableness

The objective unreasonableness factor is given "substantial weight," although it remains "only an important factor…not the controlling one*." Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 208-10 (2016). Objective unreasonableness contemplates both factual and legal components of the case. *Fogerty*, 510 U.S. at 534 n.19.

Defendants point to the factual components of both the prior knowledge of infringement and the MCA as making Plaintiffs' continued litigation objectively unreasonable. The Court agrees. Plaintiffs argue they acted reasonably because they subjectively believed neither their prior knowledge of infringement nor the MCA barred their claims. (ECF No. 99 at 5-6.) But this factor requires an objective inquiry. As the Court identified in its ruling, the Plaintiffs' asserted alternative date for notice was factually "unreasonable." (ECF No. 64 at 7.) So was Plaintiffs' failure to further investigate and their delay in pursuing Defendants (*Id.* at 8, 9, 10). This substantial factor therefore weighs in favor of granting attorneys' fees.

### 4.    Compensation and Deterrence

The final factor from *Fogerty* is "the need in particular circumstances to advance considerations of compensation and deterrence." 510 U.S. at 534 n.19. This factor overlaps significantly with frivolousness, motivation, and objective reasonableness. *See Michael Grecco Prods. Inc v. ImageSelect B.V.*, No. LA CV22-07398 JAK (JPRX), 2024 WL 5424110, at *6 (C.D. Cal. Dec. 4, 2024) ("Having previously determined that [Plaintiff's] claim was neither frivolous nor objectively unreasonable, the Court cannot conclude that [Plaintiff] should have been deterred from pursuing it.") (citation omitted);

---

[4]Counsel included a copy of the prior settlement agreement in his response to the Motion. (ECF Nos. 96, 96-5.)

*Shame On You Prods.,* 893 F.3d at 668 ("[T]he purpose of general deterrence would be served by awarding fees against a party who had litigated an objectively unreasonable claim, or who had brought a claim in bad faith."). "[D]eterring non-meritorious lawsuits against defendants seen as having 'deep pockets' and compensating parties that must defend themselves against meritless claims are both laudable ends." *Perfect 10 v. Giganews*, 2015 WL 1746484, at *12, *aff'd*, 847 F.3d 657 (citation omitted). But courts must also be careful not to discourage creators "from defending copyrights in original works due to the threat of attorneys' fees." *Brod v. Gen. Pub. Grp., Inc.*, 32 F. App'x 231, 236 (9th Cir.2002).

The Court here finds Plaintiffs' suit was not frivolous or in bad faith, but it was objectively unreasonable and therefore merits deterrence. But the Court does not want to deter other creators from defending their "life's work." (ECF No. 96 at 19.) Additionally, while Defendants spent significant funds defending this suit, they also had "ample incentive to litigate this issue without the added incentive provided by a possible recovery of attorney's fees." *Michael Grecco*, 2024 WL 5424110, at *6 (citing *Epikhin v. Game Insight N. Am.,* No. 14-CV-04383-LHK, 2016 WL 1258690, at *8 (N.D. Cal. Mar. 31, 2016)). As Defendants note, they vigorously litigated this case not only to clarify intellectual property rights for the Kiley Ranch Project, but for all their future projects as well. (ECF No. 75 at 21-22 n. 28; 101 at 9.) The Court ultimately concludes this factor is neutral and does not weigh in favor or against granting attorneys' fees.

### 5.    The Degree of Success in Litigation

The degree of success the moving party obtained in the litigation weighs in favor of granting attorneys' fees. *See Perfect 10 v. Giganews*, 847 F.3d at 675. Defendants near complete victory is undisputed. In the motion for summary judgment, the Court found for Defendants on three alternative and sufficient legal bases: the statute of limitations, laches, and contractual rights. (ECF No. 64 at 6-15.) The Court also found for Defendants on Plaintiffs' unjust enrichment claim. (*Id.* at 15.)  The Court went on to grant Defendant's counterclaim for declaratory judgment regarding non-infringement. (*Id*. at 15-16.) The

Court denied Defendants' claim regarding non-infringement but only because the Court did not reach those arguments, which the Court determined "d[id] not warrant discussion as they d[id] not affect the outcome of the motions before the Court." (*Id.* at 16.) Accordingly, Defendants practically achieved "complete success" which weighs in favor of granting attorneys' fees. *Gashtili v. JB Carter Props. II*, LLC, No. 2:12-CV-00815-MMD, 2014 WL 300178, at *2 (D. Nev. Jan. 24, 2014).

### 6.    Purposes of the Copyright Act

"The most important factor in determining whether to award fees under the Copyright Act, is whether an award will further the purposes of the Act." *SOFA Ent., Inc. v. Dodger Prods., Inc.*, 709 F.3d 1273, 1280 (9th Cir. 2013) (quoting *Mattel,* 705 F.3d at 1111.). The Copyright Act's "ultimate aim is ... to stimulate artistic creativity for the general public good." *Mattel*, 705 F.3d at 1111 (citation omitted). "[A] successful defense of a copyright infringement action may further the policies of the Copyright Act every bit as much as a successful prosecution of an infringement claim by the holder of a copyright." *Fogerty*, 510 U.S. at 527. "While the burden of defending frivolous and objectively unreasonable litigation may be deleterious to the objectives of the Copyright Act, it is not the purpose of the Copyright Act 'to deter litigants from bringing potentially meritorious claims, even though those claims may be ultimately unsuccessful.'" *Michael Grecco*, 2024 WL 5424110, at *4 (citations omitted).

This factor tracks closely with compensation and deterrence, discussed above. Considering the Court finds Plaintiffs' claims to be non-frivolous but also objectively unreasonable, this factor does not weigh in either direction.

### 7.    Chilling Effect and Inequitable Burden

Finally, the last factor to consider is "whether the chilling effect of attorney's fees may be too great or impose an inequitable burden on an impecunious plaintiff." *Perfect 10 v. Giganews*, 847 F.3d at 675. (citation omitted). This factor considers the "relative financial strength of the parties, and whether the amount requested is excessive in light of the losing party's resources." *Perfect 10 v. Giganews*, 2015 WL 1746484, at *12, *aff'd*,

*id.* (quoting *Perfect 10, Inc. v. CWIE, LLC*, No. CV 02-7624-LGB-SHX, 2005 WL 5957973, at *3 (C.D. Cal. Feb. 10, 2005)).

Defendants themselves emphasize their "relative strength, including financial strength" compared to Plaintiffs. (ECF No. 74 at 5 n.10.) Lewis has built and managed 58,000 homes, 13,000 apartments and 24 million feet of retail, office and industrial space. (*Id.*) They employ up to 1,000 people. (*Id.* at 6 n.10.) By contrast, Plaintiffs are a father and son team. (ECF No. 1 at 2-4.) After seeking and failing to obtain compensation for their "life's work" through this copyright lawsuit, they are now facing nearly one million dollars in legal fees and costs. (ECF No. 96 at 19). This would impose an inequitable burden on Plaintiffs and potentially chill future efforts by copyrighted creators. Therefore, this factor weighs against awarding attorneys' fees.

In summary, the various factors point in different directions. While Defendants prevailed over Plaintiffs' objectively unreasonable copyright claims, Plaintiffs' claims were not frivolous or improperly motivated and the fees would impose an inequitable burden and potentially chilling effect on Plaintiffs. Weighing all these factors together, the Court finds that Defendants are not entitled to fees under the Copyright Act.

**B.    Rule 68**

Both Federal and Nevada Rules of Civil Procedure allow for recovery of costs against a party that rejects an offer of judgement and ultimately obtains a less favorable outcome. *See* Fed. R. Civ. P. 68(d); Nev. R. Civ. P. 68(e). Under the Nevada state law rule, a prevailing defendant may seek an award of fees and costs against a plaintiff. See *Cheffins* v. *Stewart,* 825 F.3d 588, 597 (9th Cir. 2016); NRS § 17.117. But this is not possible under the federal rule. *See Delta Air Lines v. August*, 450 U.S. 346, 352 (1981); *UMG Recordings, Inc. v. Shelter Capital Partners Ltd. Liab. Co.*, 718 F.3d 1006, 1035 (9th Cir. 2013); *MRO Commc'ns, Inc. v. AT&T Co.*, 197 F.3d 1276, 1280 (9th Cir. 1999). When a district court exercises subject matter jurisdiction over a state law claim, the governing state rule applies. *See Cheffins*, 825 F.3d at 597 (citation omitted). But for

1    federal claims, including copyright, the federal rule governs. *See e.g. UMG Recordings,*

2    718 F.3d at 1035.

3    In *MRO Communications,* the Ninth Circuit allowed a prevailing defendant to seek

4    fees and costs under state law, even though the lawsuit raised federal law claims and

5    only supplemental state law claims. *See* 197 F.3d at 1278-79. But it only did so for

6    carefully separated costs defending the relevant state law claims at issue. *Id.* at 1279

7    ("The attorney's fees sought by Defendant AT&T do not include work relating to MRO's

8    federal statutory claims on which AT&T also prevailed.").

9    Here, Plaintiffs brought both a federal copyright claim as well as a state unjust

10   enrichment claim. (ECF No. 1.) Plaintiffs and Defendants agree that the federal copyright

11   claims are inseparable from the supplemental state law unjust enrichment claims. (ECF

12   No. 75 at 13; 99 at 3.) Because it is not possible to separate out the state law claims, and

13   because federal law bars awarding costs to prevailing defendants, the Court denies

14   awarding costs or fees pursuant to the rejected offer of judgment.[5]

15   **C.    Inherent Authority**

16   Federal courts maintain inherent power, not conferred by rule or statute, "to

17   manage their own affairs so as to achieve the orderly and expeditious disposition of

18   cases." *Goodyear Tire & Rubber*, 581 U.S. at 107. That inherent authority includes "the

19   ability to fashion an appropriate sanction for conduct which abuses the judicial process,"

20   including "an assessment of attorney's fees." *Id.* To impose sanctions pursuant to its

21   inherent authority, the court must find the offending party acted in bad faith. *See*

22   *Rodriguez v. United States*, 542 F.3d 704, 709 (9th Cir. 2008) (quoting *Chambers v.*

23   *NASCO, Inc.*, 501 U.S. 32, 45-46 (1991)). Recklessness alone is insufficient and must be

24   combined with "an additional factor such as frivolousness, harassment, or an improper

25

26   ―――――――――
     [5]Moreover, Fed. R. Civ. P. 68 only allows for recovery of costs, not attorneys' fees,
     in copyright cases like this where attorneys' fees were not "properly awardable" under
27   section 505. *UMG Recordings, Inc. v. Shelter Cap. Partners LLC*, 718 F.3d 1006, 1033-
     34 (9th Cir. 2013); *MRO Commc'ns, Inc. v. Am. Tel. & Tel. Co.*, 197 F.3d 1276, 1281 (9th
28   Cir. 1999) (citing *Beattie v. Thomas*, 668 P.2d 268, 274 n.5 (1983)).

1  purpose." *Rodriguez*, 542 F.3d at 709 (quoting *Fink v. Gomez*, 239 F.3d 989, 993–94 (9th
2  Cir. 2001)).

3        The Court here already finds Plaintiffs' litigation was not frivolous or for an improper
4  purpose. *See* III.A.1., III.A.2. Because Plaintiffs did not act in bad faith, the Court declines
5  to exercise its inherent power to impose sanctions.

6        **D.    Section 1927**

7        Section 1927 "authorizes federal courts to punish barratry by requiring offending
8  lawyers personally to satisfy their opponents' litigation debts." *Schutts v. Bently Nev.*
9  *Corp.*, 966 F. Supp. 1549, 1558 (D. Nev. 1997); 28 U.S.C. § 1927. Sanctions under
10 section 1927 "must be supported by a finding of subjective bad faith," which "is present
11 when an attorney knowingly or recklessly raises a frivolous argument or argues a
12 meritorious claim for the purpose of harassing an opponent." *New Alaska Dev. Corp. v.*
13 *Guetschow*, 869 F.2d 1298, 1306 (9th Cir. 1989); *Estate of Blas Through Chargulaf v.*
14 *Winkler*, 792 F.2d 858, 860 (9th Cir. 1989) (citations omitted). The Ninth Circuit gives
15 district courts "much discretion in determining whether and how much sanctions are
16 appropriate." *Haynes v. City & Cnty. of San Francisco*, 688 F.3d 984, 987 (9th Cir. 2012)
17 (quoting *Trulix v. Barton* 766 F.2d 1342, 1347-1348 (9th Cir. 1995)).

18       As discussed, the Court does not find Plaintiffs or Counsel acted in bad faith when
19 bringing this litigation. Therefore, the Court declines to order an award of fees under
20 section 1927.

21       **E.    Bill of Costs**

22       The Federal Rules of Civil Procedure creates a presumption that the prevailing
23 party should be awarded its costs. *See* Fed. R. Civ. P. 54(d)(1); *Stanley v. Univ. of S.*
24 *Cal.*, 178 F.3d 1069, 1079 (9th Cir. 1999) (citation omitted). Taxable costs are
25 enumerated by statute. 28 U.S.C. § 1920. The Local Rules further defines taxable and
26 non-taxable costs. *See* LR 54-1 through LR 54-11. However, the Court retains discretion
27 to refuse to award costs to the prevailing party provided the Court specifies its reasons

28

for doing so and refuses for a permissible reason. *See Ass'n of Mexican-Am. Educators v. State of California*, 231 F.3d 572, 591-92 (9th Cir. 2000).

Defendants filed a Bill of Costs for a total of $966,306.82. (ECF No. 74.) Attorneys' fees represent the majority of those costs (ECF No. 74-2 at 3-4.) Defendants cite to the same grounds identified in their Motion, which the Court already addressed and denied. (*Id.*) Additionally, Defendants withdrew their request for $4,571.00 in costs associated with obtaining copies of copyright registrations. (ECF Nos. 100 at 6; 100-1.) Therefore, the only remaining disputed costs are the expert witness fees, the Litigation Discovery Group invoice, and the copies of deposition exhibits. The Court resolves each dispute in turn.

### 1.    Expert Witness Fees

Defendants include Expert Costs and Fees in their Bill of Costs. (ECF No. 74-2 at 4-5.) Expert witness fees are generally not recoverable costs under statute or Local Rules. *See* LR 54-11(h). As Defendants identify, the only grounds for awarding the expert costs of $108,011.22 is the Court's inherent authority to award the costs as a sanction against Plaintiffs. (ECF Nos. 100 at 3; 74-2 at 4-5.) For the same reasons discussed above, the Court declines to invoke its inherent authority to sanction Plaintiffs. *See* III.C. Therefore, the Court finds these costs are not taxable.

### 2.    Litigation Discovery Group Invoice

Defendants include in their bill of costs a $1,335.46 invoice from a legal vendor called Litigation Discovery Group. (ECF No. 74-4.) The invoice includes the cost of printing, tabbing, and hole-punching documents as well as three binders and after hour labor and rush delivery fees. (*Id.*) The documents were the 127 exhibits used in deposing the Plaintiffs. (ECF No. 100 at 4.)

Defendants argue this invoice is taxable under section 1920(4) and Local Rule 54-6. (ECF No. 100 at 4); 28 U.S.C. § 1920; LR 54-5. Section 1920(4) allows for taxation of "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case." 28 U.S.C. § 1920(4). While these

exhibits were used in depositions and not at trial, this still qualifies as "use in the case." *Id.*; *see Palma v. Safe Hurricane Shutters, Inc.*, 895 F. Supp. 2d 1268, 1273 (S.D. Fla. 2012) (finding documents "used as exhibits for depositions…fall within the type of photocopy costs that are recoverable under § 1920."). But the Local Rules provide greater detail on what "exemplification" and "copies" are and are not taxable. *See* LR 54-6. The Rules permit taxation for copies of trial exhibits provided to the judge and opposing parties as well as exhibits attached to a filed document. *See* LR 54-6(a)(1), (a)(2). As Plaintiffs note, these deposition exhibits do not fall within either one of these categories. (ECF No. 98 at 5.) Moreover, the Local Rules explicitly state that any "copies obtained for an attorney's own use" are not taxable. LR 54-6(b). Defendants printed out these binders of exhibits to facilitate their own deposition of the witnesses. (ECF No. 100 at 4); *see Minden v. Allstate Prop. & Cas. Ins. Co.*, No. 2:21-CV-00151-APG-BNW, 2025 WL 2528624, at *16 (D. Nev. Sept. 3, 2025) (declining to award costs for copies of exhibits used in depositions under LR 54-6, finding they "'appear to have been provided for the convenience of the attorneys' and were thus not necessary and not taxable.") (quoting *Daniel v. Ford Motor Co.*, Civ. No. 2:11-02890 WBS EFB, 2018 WL 1960653, at *4 (E.D. Cal. Apr. 26, 2018)). Accordingly, the Court finds this invoice is not taxable.

### 3. Deposition Exhibit Copies

Defendants include $13,714.14 in costs related to deposition transcripts in their Bill of Costs. (ECF No. 74-2 at 2-3.) Plaintiffs object to three invoices within this category for a total of $208.64. (ECF Nos. 98 at 2, 5-6; 74-6; 74-7; 74-8.) These three invoices related to three different depositions and include a "Transcript Fee" as well as a charge for "Exhibits" and "Exhibit Printing." (ECF Nos. 74-6; 74-7; 74-8.)

Defendants argue these objected to costs are taxable under section 1920(2) and Local Rule 54-4. (ECF Nos. 100 at 5; 74-2 at 2-3.) Section 1920(2) identifies "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case" as taxable. 28 U.S.C. § 1920(2). Neither party disputes this applies to deposition transcripts. (ECF Nos. 100 at 6; 97 at 4.) The Local Rules more specifically detail the type of

1    deposition-related costs that are and are not taxable. *See* LR 54-4. The Local Rules

2    defines deposition transcripts as a taxable cost. *See* LR 54-4(a)(1). But they specifically

3    do not allow for any "expenses in arranging for taking a deposition," or any "special

4    formatting or production of deposition transcripts." LR 54-4(b)(1), (b)(3). It appears these

5    costs relate to the generation and printing of Defendants' own exhibits in order to take the

6    relevant depositions. Accordingly, they fall within the category of excluded costs under

7    the Local Rules. *See Minden*, 2025 WL 2528624, at *16 (declining to award costs for

8    copies of exhibits used by the prevailing party in deposition). Therefore, the Court finds

9    these objected costs of $208.64 to be non-taxable.

10    Plaintiffs do not dispute the remaining deposition costs. (ECF No. 100 at 6.) As

11    Defendants correctly identify, failure to object "may constitute a consent to the award of

12    all costs included…." (*Id.*); LR 54-1(d). Accordingly, the remaining deposition-related

13    costs, totaling $13,505.50, are taxable costs.

## IV.    CONCLUSION

15    The Court notes that the parties made several arguments and cited to several

16    cases not discussed above. The Court has reviewed these arguments and cases and

17    determines that they do not warrant discussion as they do not affect the outcome of the

18    Motion before the Court.

19    It is therefore ordered that Defendants' motion for attorneys' fees (ECF No. 75) is

20    denied.

21    It is further ordered that Plaintiffs and Counsel's objections to Defendants' Bill of

22    Costs (ECF Nos. 97, 98) are sustained. The following items of costs from the Bill of Costs

23    (ECF No. 74) are not taxable: (1) attorneys' fees ($838,675.00), (2) copies of copyright

24    registrations ($4,571.00), (3) expert witness fees and costs ($108,011.22), (4) Litigation

25    Discovery Group Invoice ($1,335.46), and (5) deposition exhibit costs ($208.64).

26    Defendants are directed to submit an amended bill of costs consistent with this order

27    within seven days for the Clerk of Court to tax.

28    ///

1    The Clerk of Court is then directed to kindly issue a memorandum regarding

2  taxation of costs consistent with this order after Defendants' filing of the amended bill of

3  costs.

4

5    DATED THIS 19th Day of September 2025.

6

7

8    _____
     MIRANDA M. DU
9    UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

15